Good morning.  Given that I thought yesterday's task was going to be an easy one and it turned out to be so difficult, today's task seems positively Herculean. I've researched the panel member's background in 2254 cases and didn't find really anything for a habeas petition or to be encouraged by. So, my task today seems to be to convince your honors that the malfunction in the state system in this case is far more extreme than in the vast majority of 2254 cases and that the need for correction is that much greater. The facts have to be unique. I would imagine they're unique in your honors' experience. The defense put on a substantial third party culpability defense and you have a guy, that third party, who's confessed to others to the murder that my client is convicted of. And not, the part that hurts the most is he confessed to a confidential informant employed by law enforcement for years and his handlers informed the state superior court in the habeas proceeding that he had never given unreliable information ever. And so, there's a state court finding that in this lone instance where he's reported this confession, that was the only time in his history of being an informant that he lied. Also unique, this third party immerses himself in a cold creek in the immediate aftermath of the murder on a cold night and he is also admittedly through the keys to his car that's parked near the murder scene into a field in the immediate aftermath of the murder. Well, counsel, let me ask you this because as you readily acknowledge, now you're facing a double burden, so to speak, right? These conflicting pieces of evidence were all presented at trial. Now there's been a conviction and you face the AEDPA hurdle at this point. So, what errors can get you past those hurdles? Yes, Your Honor. I'll just slightly correct, Your Honor. The information regarding the confidential informant confession was not presented to the jury. That came to light after the trial was concluded and that was presented in the post-conviction habeas, in the state post-conviction habeas. But that issue is not before us. There's nothing about that issue that's before us, right? Well, there is because one of the issues is whether a fundamental miscarriage of justice took place in this case in order to excuse trial counsel's failure to object to the prosecutorial misconduct in closing. Would that only be here if we expanded the COA? I wish the court would expand the COA, but no. But you didn't ask for that. You didn't brief that in your opening brief, right? I asked for it in my opening brief. I admit that I didn't brief the uncertified issues because there wasn't enough room. Before you go on, let me just add something here to Judge Nguyen's question. I'm looking at page 26 of the Court of Appeals Order, maybe ER-127, but sometimes these numbers confuse me, where the Court of Appeals said the evidence that defendant was the person who shot Officer Fontana was very strong, notwithstanding defendant's testimony that he was not the shooter. So on a lot of your arguments, you need to convince us that under AEDPA, no reasonable jurist could have that view, right? Yes. That's the standard, sure. But of course, the Court of Appeals didn't even mention, let alone marshal, all of the evidence regarding the third party's culpability that I detailed in several pages of my opening brief. None of that got mentioned. And the jury was out for eight days. I keep emphasizing this point. It was a single issue case. Who killed the officer? And the jury was out for eight days discussing it. Clearly an indicia of the closeness of the case. Don't forget that the district court characterized the defense as, quote unquote, substantial. So it's not as if the evidence was overwhelming against my client. So I'd like to start in addressing the court's questions with the NAPU claim, because that seems to be the most straightforward, and my time is limited. So all courts agree that a prosecutor has a, quote unquote, fundamental obligation once one of his or her witnesses testifies that he or she doesn't have a plea deal with the government to determine whether that is so. Well, in this case, the prosecutor didn't have to do any determining, because the plea deal was with him. So when his witness denied that there was a plea deal, and he sat there on his hands, just as the district court found, the- to get past any sort of AEDPA issues, and whether there could have been a reason that the Supreme Court or the Court of Appeal could have rejected this. Even if I were to get past all of that, I'm looking at 1910 of the Excerpts of Record and the Stip. The Stip that was read to the jury was that Janelle was convicted in 2003 to the charge of accessory. At the time she pled, it was agreed that her sentencing would be delayed unto the conclusion of the prosecution against Deshaun Campbell for the murder of San Jose officer Jeffrey Fontana. Lane Learoff is the prosecutor. Why didn't that ameliorate any prejudice? Because, well, that was certainly one of the district court's positive justifications for the denial of the claim. But I read it right, right? Yes, yes. But that's a far cry from informing the jury that she had a deal with the prosecutor that if he deemed her testimony worthy of it, he was going to inform her sentencing judge about it. That's the key information. And the district court's reliance on that stipulation as a functional substitute for actually informing the jury that there was a plea deal, and don't forget, the NAPU standard is quite lenient for a defendant. Is there any reasonable possibility that the failure to correct the testimony could have affected the verdict? That's a very forgiving standard. And so to say that any, all reasonable jurors would take from that stipulation the inference that there was a plea deal is just, it's counterintuitive. I don't believe that that's accurate. And I'll also point out that the other reasons, the other positing by the district court was that, oh, defense counsel knew about it. Well, that's in tension or in some tension with that stipulation, because if they knew about it, why not just tell the jury there was a plea deal? Why go through this whole rigmarole of repeated postponements? How is a juror supposed to know what that means? I offered a couple of suggestions in my brief. They could have thought it was just done for the convenience of the court because she'd be out of prison and free to come in and testify. They could have concluded it was her own lawyer who was securing these continuances so that he could report the cooperation to the trial judge, to the sentencing judge for the witness. And so it's not the only reasonable inference. And I would suggest, Your Honors, it's not even the most, it wouldn't occur to anybody, is my suggestion to the court. What is your view about the materiality of that witness's testimony and the fact that this was not revealed except through the stipulation? I'm glad you asked, Your Honor, because if you review the cases on materiality in the NAPU context, every single one of the indicia of materiality that courts look to to find material is present in this case. So number one, you have the prosecutorial reliance on the witness's testimony throughout his closing arguments, including spending the last few minutes of his rebuttal argument trying to convince the jury that she was telling the truth. Number two, you have the requests of the jury during deliberations. She was recorded in three separate statements. And they asked to listen to every single one of those three statements. And then in this case, the judge allowed the jurors to pose questions to the witnesses that the court would decide whether to ask or not. And there were numerous questions directed to the credibility of that witness. So all of those are present. But in addition to that, there's also the specifics of what she said, which went to the core of the case and the core of the theory of the defense, which was who killed the officer, whether it was her boyfriend or my client. So for example, she said such things as she first learned of the murder not through that third party, her boyfriend, but through somebody else. And then she repeated it to that third party. And he appeared confused and baffled by it, meaning that was the first he had ever heard of the murder. And all of this corroborates the self. That's the issue I didn't get the COA on. But they introduced all of these self-exculpating testimonial out-of-court statements from this third party. So now she's the only witness. And he never testified. So she's the only witness in the courtroom who's corroborating what he said. So that's one example. She testified that he told her that the reason he immersed himself in the creek wasn't to wash off any gunpowder that was on his hands, but because he was afraid of the pursuers from the party. So that also corroborates his story. It was the same with the throwing of the keys into the field. He didn't do that because of the murder. He did it because he was worried about his hit and run that he had been involved in earlier. And then she adds that, oh, but that hit and run wasn't a motive for him to murder a police officer because he faced a three strikes life imprisonment. He never thought that. So all of these things are material. All of these are indicia of the great materiality of everything. And I'll just add one point about materiality because the Glossop case, which was just from this past term in the Supreme Court where they affirmed the grant of habeas relief based on a NAPU error. And I would encourage the court to read that case carefully because, really, all of the justifications the court gave for its decision in that case are the arguments I made in this one. But the one difference, which is something that could be argued against this, is that in that case, the witness provided the only direct testimony in the case of the defendant's guilt. And I just want to conclude right now and save a few minutes. But in Clements v. Madden, which this court decided in 2024, the site is 112 F. 4th, 792 at 802, this is what this court said. Even if it may be the case, as the State argues, that the jury did not convict the defendant of aggravated kidnapping just because it heard that witness's testimony, that is not our inquiry. The standard for prejudice under NAPU does not require a finding that the conviction was just because or even primarily because of the false testimony. So that one distinction with Glossop I would suggest to the court should not be dispositive. And I'll reserve the rest of my time. Thank you. Thank you, counsel. Good morning, Your Honors. May it please the court. Mary DeVisa for our appellee and respondent. As the court noted, none of these claims meet the AEDPA standard for habeas relief. I will focus my time on the specific comments made by counsel. Specifically, it appears that NAPU, unless the court first has questions about other issues, I'm happy to focus on NAPU. Let me ask you one question that may be entirely irrelevant. And if it is, I apologize. And I couldn't find this in the record. The defendant testified that he was at the scene of the killing and that he gave the person he described as the killer the gun, right? Yes, Your Honor. Was there ever any instruction to the trial jury about aiding and abetting liability based on the defendant's testimony? I don't believe so, Your Honor. But I'm unable at the moment. That's fine. Thank you. Go ahead. Sorry for the interruption.  No. So I would like to focus on the NAPU claim that appellant spent some time on. Specifically, I would like to first point out that the jury was told via stipulation that was drafted by both defense counsel, one or both defense counsel, that Carter will receive a benefit at sentencing. So the jury was aware of this fact. Second, I would also like to point out that, as in Panah and in Glossop, Carter's testimony was not the centerpiece of the government's case. Now, counsel talks at length about Clements, which he did cite in his reply brief. However, Clements was disapproved by this court in Catlin v. Broomfield. And there, the facts were squarely on point with the facts here, which is that this is not the only testimony. The jury was informed that the witness will receive a benefit. The testimony was not material, according to the Court, because it was not crucial to the State's case. And that is exactly the case here. There is so much evidence of appellant's guilt that has nothing to do with what the third party's girlfriend testified to. The testimony of Carter with respect to whether or not she received a benefit here simply does not meet NAPU's standard. There is no reasonable likelihood that her testimony affected the judgment of the jury, her false testimony. The district court here correctly denied relief on all three claims. Unless the court has any questions, I would respectfully request this court to affirm its decision. How did the prosecutors' racially charged comments to the jury, portraying black people, the defendant in particular, his relationship with other members of the so-called Crips gang, the reference to Ebonics and perhaps his mental acuity challenges, not distract the jury away from the evidence? Yes, Your Honor. Of course, we all know racial comments have no place at a trial. We do not condone those comments. However, given the weight of the evidence, the racial comments simply do not meet either the Darden or the Brecht test for obtaining federal habeas relief. There is so much evidence in this case that the petitioner appellant was the car on the scene. He was the car that was stopped. It was his weapon. The third party was 175 feet away. His car was 175 feet away. Appellant several times confessed to the murder, confessed to having a motive for the murder. I can't go back to prison. There are all these warrants against me. I can't do this. It is hard to believe that even were the jury potentially swayed by these racial remarks, that that would have substantially and injuriously impact the verdict. And that is the burden here. We are not here to sort of go back and delve into credibility determinations or what the jury may have thought or how the jury may have felt about this. Even beside AEDPA issues, we're looking at the Darden standard, right? Correct, Your Honor. And if I may clarify, the Darden standard is the governing standard. There's no specialized, there's no Winship error asserted, there's no Griffin error asserted, as we made clear in the briefing. And at least on my view from reading what's in Darden, and again, I echo that these comments shouldn't have been made, I think the Darden comments were far worse. The Darden comments by the prosecutor. Is Your Honor referring to the claim of burden? No, I'm talking about the racial remarks that were the subject of the Darden case, that the majority of the Supreme Court found did not so infect the trial with unfairness as to make the resulting conviction a due process denial. Yes, Your Honor. And we agree. And again, these comments had no place here, but these comments simply don't rise to the level of obtaining federal habeas relief at this stage of the proceedings. Unless this court has questions, I would respectfully request that the district court opinion denying federal habeas relief be affirmed. Thank you, counsel. Thank you, Your Honor. First, addressing Judge Bennett's question, I don't believe an aiding and abetting instruction was given. The government never conceded an iota that the third party was even present, so there was no need for it to argue, and it didn't argue aiding and abetting there. I assumed that. I assumed that if there had been an aiding and abetting instruction, it would have somewhere appeared in the record. OK. My colleague keeps referring to so much evidence and the weight of evidence that never takes into account that the jury was out for eight days. Something kept them out for eight days. And there's a plethora of cases that look at the length of deliberations as an indicium of the closeness of a case. As far as the racism goes and the remarks in Darden were worse, I'll just say that racial bias is always a very powerful problem. And that's why courts, federal courts especially, have subjected them to exceptional scrutiny. And there's a bit of tension between that exceptional scrutiny and epidefference. But putting that aside, let's not forget that everybody in the courtroom was white, the judge, the prosecutor, every member of the jury. So when this race was injected into the proceedings by the prosecutor, and I'll just make clear that for absolutely no reason, to introduce black boogeyman and an angry black man. And there's one comment as I put it. I think we all agree with that, counsel. The question is really prejudiced. Well, here's one thing I should have emphasized more in my briefs, but I didn't. His remark about community values. And if my client's car wasn't found at the murder scene, then they would have had to rely on the community. And he's not sure they would have gotten anywhere. He's essentially saying that African-Americans in the community wouldn't have come forward to, and haven't come forward to, tell the truth. So counsel, as Judge Nguyen said, I think we all and your friend agree that these comments shouldn't have been made and were wrongfully made. The standard in Darden is whether the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. You agree, right? I don't necessarily agree, Your Honor, because I argue that the De Cristoforo standard applies because the client's equal rights, his constitutional guarantee of equal rights was specifically violated. And when there's a specific constitutional guarantee violated, courts afford, I can't remember the phrase, special care or something like that. Let's assume we were to disagree with you and to find Darden binding. Can you meet the Darden standard given what the remarks were in Darden that the Supreme Court said didn't infect the trial? Well, I've made my best arguments of why I do meet that standard, regardless of my argument that it's the other standard that applies. And what more can I do? We don't know if obviously, of course, the jurors thought processes and whether they were affected by the racism, but there's a reason that the prosecutor injected the racism into the proceedings. He understood the case was close and he was looking for every advantage he could get and he thought that was one way to do it. So those are my responses. If there's no more questions, I'll submit. Thank you, counsel, for your argument. Both sides, the matter is submitted. Thank you, Your Honor.
judges: NGUYEN, BENNETT, Matsumoto